IN THE

# United States Court of Appeals

## FOR THE SIXTH CIRCUIT

◆ ◆ ◆

In re: TAGNETICS, INC.,

*Debtor.*

TAGNETICS, INC., aka Powershelf,

*Appellant,*

—v.—

KENNETH W. KAYSER; RONALD E. EARLEY; JONATHAN HAGER,

*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO (DAYTON),
U.S. BANKRUPTCY COURT (DAYTON)

## REPLY BRIEF OF APPELLANT

STEPHEN B. STERN
KAGAN STERN MARINELLO
  & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(410) 216-7900
stern@kaganstern.com

*Attorneys for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………ii

INTRODUCTION…………....………………………………………………….1

ARGUMENT….……………………………………………………………………2

    I.    THE REMAINING PETITIONING CREDITORS DO NOT ACTUALLY ANALYZE THE MEANING OF THE PHRASE THAT IS AT ISSUE ON APPEAL…………………………………………..2

    II.    THE EXTRINSIC EVIDENCE PRESENTED BY TAGNETICS OVERWHELMINGLY SUPPORTS ITS POSITION....……...……10

    III.    APPELLEES MISCHARACTERIZE THE RECORD……………...11

    IV.    APPELLEES CONSISTENTLY FAIL TO CITE AND/OR ACCURATELY REFLECT THE RECORD………………………..15

    V.    THE COURT SHOULD DISREGARD THE REMAINING PETITIONING CREDITORS' REFERENCE TO A SUBSEQUENT SETTLEMENT PROPOSAL, AS IT IS NOT RELEVANT TO THE ISSUES ON APPEAL…………………………………………….…17

    VI.    THE REMAINING PETITIONING CREDITORS DO NOT OFFER ANY EVIDENCE OR VIABLE ARGUMENT THAT THERE WAS A MEETING OF THE MINDS IN THE EVENT THE COURT DETERMINES THE PHRASE "FULL MUTUAL RELEASES (NO CARVE OUTS)" DOES NOT INCLUDE RELATED PARTIES………………………………………………………………18

CONCLUSION….………………………………………………………………..19

CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7)…………………..20

CERTIFICATE OF SERVICE …………………………………………………..21

# TABLE OF AUTHORITIES

## CASES

### Federal Cases

*Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club,*
    2003 U.S. Dist. LEXIS 27460 (S.D. Ohio 2003) …………………………...17

*Foster v. Barilow,*
    6 F.3d 405 (6th Cir. 1993) ……………………………………………………18

*NCUA Bd. v. Zovko,*
    728 Fed. Appx. 567 (6th Cir. 2018) …………………………………………...16

*TMW Enters. v. Fed. Ins. Co.,*
    619 F.3d 574 (6th Cir. 2010) ………………….....…………………….....…….3

*Trebilcock v. Elinsky,*
    2007 WL 295440, 2007 U.S. Dist. LEXIS 6167
    (N.D. Ohio January 26, 2007) ……………………………………….……9

### State Cases

*Alexander v. Buckeye Pipe Line Co.,*
    374 N.E.2d 146 (Ohio 1978) ………………………………………………...2

*Foster Wheeler Envirespone, Inc. v. Franklin County Convention Facilities Auth.,*
    678 N.E.2d 519 (Ohio 1997) ……..…….……………..………………..2

*Nilavar v. Osborn,*
    127 Ohio App. 3d 1 (2d Dist. 1998) …………………………………………7

## COURT RULES

Fed. R. App. P. 28(a)(8)(A) ………………………………………………17

Fed. R. App. P. 32 …..…………..………………………………………20

# **INTRODUCTION**

Appellees Kenneth K. Kayser ("Kayser"), Ronald E. Earley ("Earley"), and Jonathan Hager ("Hager") (collectively, the "Remaining Petitioning Creditors") filed their brief on August 5, 2020 in support of the Bankruptcy Court's and District Court's rulings. The Remaining Petitioning Creditors' brief misses the main legal issue on appeal, however, i.e., whether the term "full mutual releases (no carve outs)" includes a release of individuals/entities related to the parties, such as parent companies, subsidiaries, affiliates, officers, directors, heirs, and personal representatives ("Related Parties"). Instead, the Remaining Petitioning Creditors focus on whether Compass Marketing, Inc. ("Compass Marketing"), is an affiliate of Appellant Tagnetics, Inc. ("Tagnetics"), and subject to the release. To the extent that the Remaining Petitioning Creditors included arguments related to the issue at hand, they failed to rebut Tagnetics' arguments and failed to support the portions of the Bankruptcy Court's and District Court's decisions that are in error. Furthermore, the Remaining Petitioning Creditors repeatedly (a) mischaracterized and/or misstate the record and/or evidence submitted during the pendency of this matter, and/or (b) failed to cite to the record or evidence in support of the conclusions they make. Each of the Remaining Petitioning Creditors' arguments is unavailing and should be rejected by this Court.

# ARGUMENT

## I. THE REMAINING PETITIONING CREDITORS DO NOT ACTUALLY ANALYZE THE MEANING OF THE PHRASE THAT IS AT ISSUE ON APPEAL

Tagnetics' main contention in this appeal deserves restatement -- the Bankruptcy Court and District Court should not have found that the phrase "full mutual releases (no carve outs)" clearly and unambiguously *excluded* the Related Parties. Instead those courts should have found that the phrase "full mutual releases (no carve outs)" from the July 26 email either clearly and unambiguously, or when considering extrinsic evidence (if the Court deems the phrase ambiguous), includes the Related Parties.

The Remaining Petitioning Creditors make little effort to refute Tagnetics position regarding the interpretation of the phrase "full mutual releases (no carve outs)," other than to simply adopt the Bankruptcy and District Court's reasoning. Most importantly, Tagnetics' position is that while it is the Court's province to interpret the terms of a contract, it cannot give terms their plain meaning if such an interpretation results in "manifest absurdity" or another meaning is clearly evident from the face of the overall contents of the contract. *See Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (citing *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146 (Ohio 1978)). Here, the Bankruptcy Court, District Court, and Remaining Petitioning

Creditors incorrectly concluded that the terms "full" and "(no carve outs)" clarify that there are no exceptions to the *types of claims* in the mutual releases. This interpretation is strained at best. Moreover, there was no factual and/or legal analysis to explain how or why the phrase *only* addresses the types of claims released, and not the parties. In fact, by interpreting the terms "full" and "(no carve outs)" to pertain only to the types of claims released, and not the parties released, the Bankruptcy Court, District Court, and Remaining Petitioning Creditors treat these terms as redundant. Such an interpretation necessarily renders at least one of the terms superfluous, which is contrary to applicable law. *See, e.g., TMW Enters. v. Fed. Ins. Co.,* 619 F.3d 574, 578 (6th Cir. 2010) ("[C]ourts must avoid interpreting contracts to contain superfluous words. The canon is one among many tools for dealing with ambiguity, not a tool for creating ambiguity in the first place.").

To avoid redundancy and/or suplusage, the more appropriate conclusion would have been to find at least one of the words/phrases addresses the types of claims being released, while the other addresses the parties being released.[1] Furthermore, Tagnetics cited numerous cases that have reached the same conclusion

---

[1] While either "full" or "no carve outs" can apply to the parties being released while the other applies to the types of claims, the term "full" may be more suitable to apply to the parties. Among other things, it was explained at the October 18 hearing that the phrase "no carve outs" applied to the types of claims being released. *See* Hearing Transcript, held on October 18, 2019, RE A155, Page ID # A204 – 205.

that Tagnetics advances here (*see* Brief, pgs. 26-31),[2] which is that a full release necessarily applies to related parties, such as parent companies, subsidiaries, and affiliates, among others. The Remaining Petitioning Creditors offer no rebuttal to this case authority whatsoever.[3] In addition to the abundance of case authority Tagnetics cited, Tagentics proffered evidence that it is "common practice" to include in any full release of a business entity a release of the entity's parent companies, subsidiaries, affiliates, and other related individuals, such as officers and directors. *See* Brief, pg. 38.

Instead of focusing on the interpretation of the phrase at issue, the Remaining Petitioning Creditors focus a substantial portion of their argument on whether the scope of the release in the parties' settlement agreement specifically included reference to Compass Marketing. The issue on appeal regarding the scope of the disputed release language, however, is whether the Remaining Petitioning Creditors agreed to release not only Tagnetics, but also its parent companies, subsidiaries, affiliates, officers, directors, and other parties related to Tagnetics (and, correspondingly, whether Tagnetics released parties related to the Remaining

---

[2] Any reference to the "Brief" in this Reply Brief shall refer to Tagnetics' opening Brief filed on July 8, 2020.

[3] The one case relied on by the District Court was distinguished in Tagnetics' opening Brief and, in fact, that case even supports Tagnetics' argument. *See* Brief, pg. 31 – 33.

Petitioning Creditors, such as their heirs, representatives, and assigns). Whether Compass Marketing is or is not an affiliate of Tagnetics does not resolve the ultimate issue before the Court, which is whether the release language included affiliates (and other Related Parties) of Tagnetics in the first place. If the Remaining Petitioning Creditors want to take up the issue of whether Compass Marketing is an affiliate of Tagnetics (and, thus, subject to a release that includes parent companies subsidiaries, affiliates, and other related parties – the release that this Court should find was agreed to and part of the settlement agreement), they are free to do so another time, but that is not an issue on appeal or before this Court.[4]

The Remaining Petitioning Creditors' bizarre assertion that the phrase "full mutual releases (no carve outs)" was used "to demonstrate Tagnetics['] agreement to grant a release to the petitioning creditors (Appellees) with no exceptions" defies logic. *See* Brief of Appellees, pg. 12. First, and as Tagnetics' counsel testified at the October 18, 2019 hearing (and which testimony was unrebutted), the Remaining Petitioning Creditors were the ones who sought a full release from Tagnetics. *See* Hearing Transcript, held on October 18, 2019, RE A155, Page ID # A185 - 87. After

---

[4] Tagnetics has made it abundantly clear that the issue of whether Compass Marketing was specifically included in the release, either by name or as an affiliate, is not being appealed. *See* Brief, pg. 14, fn. 5; *see generally,* Appellant's Brief in *Tagnetics, Inc. v. Kenneth Kayser, et al.*, United Stated District Court for the Southern District of Ohio, Case No. 3:19-cv-363, dated February 27, 2020 (RE 12, Case No. 3:19-cv-363, PageID # 466-503), RE A414, Page ID # A432, fn. 5.

discussing the Remaining Petitioning Creditors' demand with Tagnetics that each

party be completely released, Tagnetics agreed, so long as the releases were mutual.

*Id.* Further, the Remaining Petitioning Creditors' argument ignores the word

"mutual" in the phrase "full mutual releases (no carve outs)" by claiming that the

agreed upon release language in the July 26, 2019 email was, in a sense, a one-way

release from Tagnetics to the Remaining Petitioning Creditors. As the factual

progression indicates, Tagnetics was initially hesitant to grant a release to the

Remaining Petitioning Creditors, but ultimately included the release, so long as

Tagnetics received the same "mutual" release in return from the Remaining

Petitioning Creditors. Hearing Transcript, held on October 18, 2019, RE A155, Page

ID # A186. Indeed, the mutuality of the release supports Tagnetics' position. In this

regard, it is incongruent and simply unreasonable on its face for the Remaining

Petitioning Creditors to think (and argue) the phrase "full mutual releases (no carve

outs)" means Tagnetics would release the Remaining Petitioning Creditors and each

of their Related Parties, as reflected in the draft agreement and which the Remaining

Petitioning Creditors readily found acceptable,[5] but at the same time "full mutual

releases (no carve outs)" would apply only to a release of Tagnetics and not its parent

---

[5] *See* Email from Stephen Stern to Ken Kayser and Ronald Earley, dated August
14, 2019 with attached Settlement Agreement, RE A21, Page ID # A23 – 25.

companies, subsidiaries, affiliates, officers, directors, or other related parties.[6]

Moreover, by continuing to argue (without citation to any supporting evidence) that each Remaining Petitioning Creditor secretly and subjectively believed the release language to be less than "full and mutual," the Remaining Petitioning Creditors offer "evidence" that may not be considered by the Court. *See Nilavar v. Osborn*, 127 Ohio App. 3d 1, 12 (2d Dist. 1998) ("Secretly held, unexpressed intent is not relevant to whether a contract is formed.").

While the Remaining Petitioning Creditors recognize that the Bankruptcy Court was supposed to apply an objective (rather than subjective) analysis as to what the parties meant when entering into the settlement agreement, the Remaining Petitioning Creditors continued to present their subjective interpretation of the meaning of the phrase "full mutual releases (no carve outs)," while ignoring the ample objective evidence presented by Tagnetics. For example, the Remaining

---

[6] The Remaining Petitioning Creditors were advised on numerous occasions to seek legal counsel when negotiating the terms of the settlement agreement. *See* Brief, pg. 14, n.8. Further, the Remaining Petitioning Creditors state in their brief that two attorneys allegedly reviewed the release language and found the language "concerning." While the Remaining Petitioning Creditors cite no evidence and/or any document in the record to support this new contention, the Remaining Petitioning Creditors' alleged concerns regarding the scope of the phrase "full mutual releases (no carve outs)" was not raised until August 16, 2019, which was twenty-eight (28) days following the agreement that was reached on July 26, 2019 (which was reflected in multiple emails that day) and following numerous instances where Tagnetics' counsel urged the Remaining Petitioning Creditors to seek their own counsel to review the settlement agreement.

Petitioning Creditors conceded that the scope of the release the parties agreed to applied to related parties, such as affiliates. *See* Email from Stephen Stern to Jon Hager, dated August 19, 2019, RE A29, Page ID # A30 ("[i]f Compass [Marketing] is not an operating affiliate [sic] then they are not a party to this settlement"). When this admission is restated affirmatively, and the double negatives are removed, it clearly means, if Compass Marketing (or other entity) *is* an operating affiliate of Tagnetics, then it is released. This admission clearly belies the Remaining Petitioning Creditors' bald conclusion that Tagnetics' position on the scope of the release is "not an accurate conclusion." *See* Remaining Petitioning Creditors' Brief, pg. 15. Further, if the Remaining Petitioning Creditors' statement that affiliates of Tagnetics are to be included within the scope of the release is not considered an admission and/or acknowledgment, then the Remaining Petitioning Creditors' own words are given no meaning, which cannot be the case. The only logical conclusion is that the Remaining Petitioning Credits had the same objective (and subjective) as Tagnetics regarding the meaning of the phrase "full mutual releases (no carve outs)" – which is that it obviously included Related Parties, including specifically affiliates of Tagnetics.[7]

---

[7] At worst, the quoted language in the email from Stephen Stern to Jon Hager, dated August 19, 2019, RE A29, Page ID # A30, shows that the Remaining Petitioning Creditors had questions as to whether Compass Marketing was an affiliate of Tagnetics, not whether affiliates were included in the release. As noted above, the

The Remaining Petitioning Creditors primary (and perhaps only) argument regarding the meaning of the phrase at issue can be found on pages 17 and 18, where they contend that the July 26 email did not identify any other party as being subject to the release. This argument, however, ignores the abundance of case law cited by Tagnetics regarding typical release language. *See* Brief, pgs. 26 – 33. As explained in Tagnetics' Brief, negotiations in those cases generally did not include a specific reference to other parties being released; yet, the courts found that the releases applied to Related Parties. *Id.* Here, the term sheet agreed to by the parties went further, it described the mutual releases as being "full" and with "no carve outs." Moreover, the absence of a particular term in a term sheet is not dispositive of the issue. *See Trebilcock v. Elinsky*, 2007 WL 295440, 2007 U.S. Dist. LEXIS 6167, *26 (N.D. Ohio January 26, 2007) (holding that a term sheet is an enforceable agreement even though it did not specifically address and resolve a dispute between the parties as to how the entity in question, Sagebrush, would be managed).

Under these circumstances, the Bankruptcy Court's and District Court's conclusion that "full mutual releases (no carve outs)" clearly and unambiguously excludes Related Parties is wrong. Rather, the phrase either clearly and

---

issue of whether Compass Marketing is an affiliate of Tagnetics is not before this Court on appeal.

unambiguously includes Related Parties or, in the alternative, it is ambiguous, in which case extrinsic evidence should be considered.

## II.  THE EXTRINSIC EVIDENCE PRESENTED BY TAGNETICS OVERWHELMINGLY SUPPORTS ITS POSITION

In addition to the Remaining Petitioning Creditors' own statement acknowledging that affiliates of Tagnetics also would be released, Tagnetics presented substantial extrinsic evidence to support its position.  For example, and as argued in Tagnetics' Brief, additional objective evidence can be found in the prior agreement Tagnetics entered into with one of the Remaining Petitioning Creditors. To this end, the same exact release language found in the draft settlement agreement also was included in the settlement agreement Kayser signed on behalf of Kayser Ventures, Ltd., earlier in this same litigation.  *See* Brief, pg. 40-41.  At the very least the settlement agreement with Kayser constitutes objective evidence that Kayser was aware of or otherwise had knowledge that Tagnetics expected the release in this matter would apply not only to Tagnetics, but also its parent companies, subsidiaries, affiliates, and other related individuals/entities.  *Id.* at 40.  With this backdrop, it is clear that despite being provided objective evidence to support the context in which the contract was negotiated, the Bankruptcy Court failed to give the evidence any weight in rendering its opinion.

Further, Tagnetics put forth other extrinsic evidence, including testimony at the hearing in Bankruptcy Court regarding the "standard operating procedure" of

including Related Parties in a release, and that testimony was unrebutted.  *See* Brief, pgs. 38-40.

For these reasons and those reflected in the Brief, the Remaining Petitioning Creditors' arguments that the phrase "full mutual releases (no carve outs)" are without merit and the Court should hold that the phrase "full mutual releases (no carve outs)" included a release of the Related Parties, such as parent companies, subsidiaries, affiliates, officers, directors, heirs, personal representatives, and other related parties.

## III. <u>APPELLEES MISCHARACTERIZE THE RECORD</u>

The Remaining Petitioning Creditors assert that Tagnetics argued at the October 18, 2019 hearing that the July 26, 2019 email contained all the settlement terms and that "no other terms, whether or not discussed prior to the July 26, 2019 email, could be included in the agreement settlement."  *See* Appellees' Brief, pg. 8. The Remaining Petitioning Creditors, however, did not cite any portion of the record where Tagnetics' counsel allegedly made this statement (or a similar statement). The reason for the lack of citation is that Tagnetics' counsel never made this statement and there was never anything communicated to even allow such an inference.  In fact, counsel for Tagnetics testified that the July 26, 2019 email contained the "key terms" of the Settlement Agreement (*see* Hearing Transcript, held on October 18, 2019, RE A155, Page ID # A169, A187) and that the agreement will

be more thoroughly documented in a written settlement agreement to be prepared in the coming days (*see Id.* at A188).

Similarly, the Remaining Petitioning Creditors state (again, without citation to the transcript) that "Mr. Stern and Mr. Kracht argued that any terms sought by the petitioning creditors (Appellees) that were not listed explicitly in the email agreement were beyond the scope of the agreement." *See* Appellees' Brief, pg. 10. At the October 18, 2019 hearing, counsel for Tagnetics testified that, after sending the draft settlement agreement, the parties exchanged emails and "[m]any of the terms included below [by the Remaining Petitioning Creditors] clearly fall outside the scope of what we agreed to, the email exchange on July 26, 2019, at 3:56 p.m. and again at 3:59 p.m." *See* Hearing Transcript, held on October 18, 2019, RE A155, Page ID # A203. The Remaining Petitioning Creditors mischaracterize the context of this statement by Tagnetics' counsel and the previous settlement discussions between the parties. As previously stated, and it cannot be disputed, the July 26, 2019 email established the "key terms" of the settlement agreement. Following the parties' agreement via email on the "key terms," counsel for Tagnetics drafted a settlement agreement, which remained entirely consistent with the "key terms" from the July 26, 2019 email. The Remaining Petitioning Creditors, however, sought to modify the settlement agreement in a way that was inconsistent with the "key terms" from the July 26, 2019 email. Notably, for example, the Remaining Petitioning

Creditors attempted to add payments that were not included in the July 26 email exchange. In addition, those requests for additional payments clearly seek an exception to the "full mutual releases (no carve outs)." *Id*. Also by way of example, the Remaining Petitioning Creditors attempted to add other provisions that were not part of the "key terms" from the July 26, 2019 email, including a request for a default judgment. *Id.* at A204. In proper context, Tagnetics' counsel's statement makes sense – the draft settlement agreement contained additional and often "boilerplate" terms that otherwise were not captured in the July 26, 2019 email establishing the "key terms." Further, and more importantly, the draft settlement agreement remained entirely consistent with and did not alter in any way the "key terms" from the July 26, 2019 email. More importantly for purposes of this appeal, the settlement agreement reflected releases of and for all parties that were (and are) consistent with the phrase "full mutual releases (no carve outs)." On the other hand, the Remaining Petitioning Creditors did indeed attempt to alter the agreed upon "key terms" from the July 26, 2019 email by proposing, among other things, many exceptions to the release (and they are seeking to do the same here by trying to limit the scope of the release). It is evident that the Remaining Petitioning Creditors have attempted to use Tagnetics' counsel's testimony to mislead the Court regarding the scope of the terms of the agreement between the parties.

The Remaining Petitioning Creditors also frequently and consistently failed to accurately quote the actual phrase that is the subject of this appeal, which is "full mutual releases (no carve outs)." The Remaining Petitioning Creditors, however, use the following phrases at various points in their brief in lieu of the complete and accurate phrase:

- On page 5, the Remaining Petitioning Creditors state, "Tagnetics is questioning whether the settlement agreement is a valid contract stating that if the Court of Appeals does not agree that the affiliated parties are covered by the term "full mutual release", then there was no meeting of the minds and therefore no contract."

- On page 6, the Remaining Petitioning creditors use the term "mutual release."

- On page 10, the Remaining Petitioning Creditors refer to the phrase as "full mutual releases."

- On page 12, the Remaining Petitioning Creditors refer to the phrase as "[t]he term full mutual release."

- On page 18, the Remaining Petitioning Creditors refer to the phrase as "the full mutual release statement."

- At the bottom of page 18 to the top of 19, the Remaining Petitioning Creditors describe the phrase only as "the full mutual release."

- On page 19, the Remaining Petitioning Creditors describe the phrase as "the mutual release (no carve outs)."

- On page 23, the Remaining Petitioning Creditors describe the phrase as "the mutual release."

The Remaining Petitioning Creditors' use of these truncated or incomplete phrases, as opposed to the phrase that is at issue on appeal, appears to be an attempt to distract from and/or confuse the issue at hand. By consistently misquoting the actual agreed upon release language, the Remaining Petitioning Creditors ignore the main argument, i.e., that the use of "full" in conjunction with "(no carve outs)" is not merely duplicative language, but, rather, each portion of the phrase must be given meaning. The fact that the Remaining Petitioning Creditors consistently misquote the phrase at issue is telling for another reason – in order to support the interpretation reached by the Bankruptcy Court and District Court, they must alter the terms at issue. In other words, the language at issue does not comport with the conclusions reached by the Bankruptcy Court and the District Court.

## IV. APPELLEES CONSISTENTLY FAIL TO CITE AND/OR ACCURATELY REFLECT THE RECORD

While the Remaining Petitioning Creditors mischaracterize the record and the context in which statements were made, the Remaining Petitioning Creditors also consistently fail to cite to the record and/or cite evidence in support of the numerous assertions they make. For example, the Remaining Petitioning Creditors make the following assertions and/or conclusions without citation and/or reference to any document in the record or properly admitted evidence at the October 18, 2019 hearing:

- On page 10 of their brief, the Remaining Petitioning Creditors state, "Mr. Stern and Mr. Kracht argued that any terms sought by the petitioning creditors (Appellees) that were not listed explicitly in the email agreement were beyond the scope of the agreement."

- On page 14 of their brief, the Remaining Petitioning Creditors state that "[d]uring the time Kayser and Earley were Directors, they were not aware of Compass Marketing having significant stock ownership just significant number of un-exercised stock options. Some of the release language was also concerning and was reviewed by an attorney in Roanoke, Virginia and an attorney in Dayton, OH who both shared concern with how the release language was presented."

- On page 18 of their brief, the Remaining Petitioning Creditors state that "[t]he Bankruptcy Court expressed concern about Tagnetics counsel's arguing to include Compass Marketing in the agreed settlement during Mr. Stern's evidentiary hearing testimony," followed by three additional sentences regarding what the Bankruptcy Court purported to state and/or conclude regarding the testimony.

Without proper citation to the record and/or properly admitted evidence, Tagnetics cannot reasonably determine (a) whether the Remaining Petitioning Creditors have accurately quoted any particular document or testimony, (b) whether the Remaining Petitioning Creditors have properly included the relevant context in the event any passage has been property quoted, and (c) if the above two conditions have been met, whether the argument being advanced by the Remaining Petitioning Creditors is relevant to the issue(s) on appeal.

Further, it is not the job of this Court to sift through the evidence and the record to perform the above analysis. *See NCUA Bd. v. Zovko*, 728 Fed. Appx. 567,

569 (6th Cir. 2018) (citing Fed. R. App. P. 28 (a)(8)(A) for the proposition that a court is not obligated to search the record for support of an argument); *see also Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club,* 2003 U.S. Dist. LEXIS 27460, n.62 (S.D. Ohio 2003) ("Plaintiffs' factual assertions are not supported by the evidence, insofar as they either do not provide citation to the record, or they cite to inadmissible documentation."). Given that the Remaining Petitioning Creditors rely on unsupported and/or uncited assertions, the Court should assume that each assertion and/or argument advanced by the uncited portions of their argument are not found in the record and, thus, give no weight to each.

**V. THE COURT SHOULD DISREGARD THE REMAINING PETITIONING CREDITORS' REFERENCE TO A SUBSEQUENT SETTLEMENT PROPOSAL, AS IT IS NOT RELEVANT TO THE ISSUES ON APPEAL**

The Remaining Petitioning Creditors try to make an issue of their alleged offer to enter into a supplemental agreement that purportedly would have given Tagnetics the full release it is seeking on this appeal. *See* Appellees' Brief, pg. 20. As Tagnetics argued before the District Court, the Remaining Petitioning Creditors' reference to an alleged subsequent settlement proposal is not relevant to the issues on appeal and is not responsive to the issues raised by Tagnetics in its Brief. Furthermore, even if the events after the October 18, 2019 hearing occurred as

described by the Remaining Petitioning Credits,[8] they may not be considered by this Court because they are not part of the record and could not have been considered by the Bankruptcy Court when it issued its decision. *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (holding the court may not consider evidence proffered on appeal when the information was not first submitted to the district court and made part of the record). Thus, the Remaining Petitioning Creditors reference to subsequent attempts at settlement and/or their alleged subsequent settlement offer should be stricken or, at the very least, not considered by this Court.

## VI. THE REMAINING PETITIONING CREDITORS DO NOT OFFER ANY EVIDNECE OR VIABLE ARGUMENT THAT THERE WAS A MEEETING OF THE MINDS IN THE EVENT THE COURT DETERMINES THE PHRASE "FULL MUTUAL RELEASES (NO CARVE OUTS)" DOES NOT INCLUDE RELATED PARTIES

When addressing Tagnetics' alternative argument (in the event the Court determines that phrase "full mutual releases (no carve outs)" does not include Related Parties, the Remaining Petitioning Creditors largely echo their arguments regarding the scope of the release.[9] Rather than repeat the arguments on this issue from Tagnetics' Brief, in the event the Court determines the releases do not apply to

---

[8] Tagnetics is not even sure it understands each assertion made by the Remaining Petitioning Creditors regarding the alleged post-hearing events.

[9] To the extent the Remaining Petitioning Creditors' arguments do respond to the arguments Tagnetics made in its Brief, Tagnetics does not understand the arguments to do so, other than the Remaining Petitioning Creditors contend that Tagnetics understood the releases were limited in scope.

Related Parties, Tagnetics will rely on and incorporate by reference its arguments that from its opening Brief that Tagnetics clearly and objectively had an understanding that the releases would apply to Related Parties and, therefore, there was no meeting of the minds and no agreement to enforce.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Tagnetics' Brief, the Court should either (1) affirm the decision of the Bankruptcy Court, in part, and reverse the decision of the Bankruptcy Court with respect to the scope of the release and hold that the term "full mutual releases (no carve outs)" includes releases of related individuals/entities, such as parent companies, subsidiaries, affiliates, officers, directors, and, as appropriate, heirs and personal representatives, or (2) if the term "full mutual releases (no carve outs)" does not include a release of the related parties advocated by Tagnetics, reverse the decision of the Bankruptcy Court and hold there was no meeting of the minds and, thus, there was no settlement agreement to enforce.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 4,582 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32(b)(1). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Respectfully submitted,

_____*/s/ Stephen B. Stern*_____
Stephen B. Stern
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(410) 216-7900 – Telephone
(410) 705-0836 – Facsimile
stern@kaganstern.com (email)

*Counsel for Appellant/Alleged Debtor*
*Tagnetics, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2020, a copy of the foregoing Reply Brief of Appellant was served (i) **electronically** on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the court, (ii) via email only to those email addresses below, and (iii) by **First Class Mail** addressed to:

Kenneth W Kayser
PO Box 115
Catawba, VA 24070
drkwkayser@gmail.com

Ronald E. Early
6429 Winding Tree Drive
New Carlisle, OH 45344
ronald.earley1@gmail.com

Jonathan Hager
842 Paint Bank Road
Salem, VA 24153
pufferboater@gmail.com

MaryAnne Wilsbacher
Office of the United States Trustee
170 North High Street
Suite 200
Columbus, Ohio 43215

_____*/s/ Stephen B. Stern*_____
Stephen B. Stern